**PUBLISH**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-02790-REB

JOSEPH A. GHINI,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING COMMISSIONER

---

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed October 11, 2013,

seeking review of the Commissioner's decision denying plaintiff's claim for supplemental

security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et

seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. §

405(g). The matter has been fully briefed, obviating the need for oral argument. I

affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that he is disabled as a result of an arachnoid cyst, post-

traumatic stress disorder, depression, sleep apnea, and chronic pain. After his

---

    [1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific
paper by the court's case management and electronic case filing system (CM/ECF). I use this convention
throughout this order.

application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on May 24, 2012.  At the time of the hearing, plaintiff was 31 years old.  He has a high school education and past relevant work experience as a construction laborer.  He has not engaged in substantial gainful activity since October 24, 2010, the date of his application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits.  Although the evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  Plaintiff's sleep apnea was found not to constitute a severe impairment. The ALJ found that plaintiff had the residual functional capacity to perform a range of light work with certain environmental limitations which required no contact with the public and no more than superficial contact with supervisors and coworkers.  Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that he could perform.  He therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42

2

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)©).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater***, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual

functional capacity.

20 C.F.R. § 416.920(a)(4)(I)-(v).  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  ***Id.***  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  ***Brown***, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh

4

the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

## III.  LEGAL ANALYSIS

Plaintiff claims the ALJ erred at each of steps 2 through 5 of the sequential

evaluation.  Finding no reversible error in the ALJ's decision, I affirm.

Plaintiff first argues that the ALJ erred at step 2 of the sequential evaluation by

failing to consider the combined impact of all his impairments, both severe and non-

severe.[2]  ***See* Social Security Ruling 85-28**, 1985 WL 56856 at *2 (SSA 1985) ("In

determining whether an individual's physical or mental impairment or impairments are of

a sufficient medical severity that such impairment or impairments could be the basis of

eligibility under this section, the [Commissioner] shall consider the combined effect of all

of the individual's impairments.") (citation and internal quotation marks omitted).   The

ALJ considered plaintiff's sleep apnea but found that it imposed no more than minimal

limitations on his ability to perform work related activities.[3]  (Tr. 22.)  The ALJ therefore

concluded that this impairment was not severe.  **Social Security Ruling 85-28**, 1985

WL 56856 at *3 (impairment not severe if it is merely a "slight abnormality or a

combination of slight abnormalities which would have no more than a minimal effect on

---

[2]  Plaintiff's suggestion that the ALJ should have considered his chronic pain a severe impairment ignores the ALJ's express finding to that effect.  (*See* Tr. 22 (noting that chronic neck, back, and shoulder pain are severe impairments).)  Moreover, the Tenth Circuit case to which plaintiff cites discusses the medically determinable impairment of somatoform disorder,  a condition with which plaintiff has never been diagnosed.  *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996).

[3]  In this regard, the judge noted, *inter alia*, that plaintiff had received no treatment for sleep apnea, and in particular had not been prescribed a CPAP machine.  (Tr. 22.)  The single page to which plaintiff cites in support of his allegation of indigence merely reiterates that he is seeking disability.  (*See* Tr. 736.)  Plaintiff's suggestion that his failure to seek treatment was due to indigence finds little support in the record.  Although plaintiff testified to a lack of insurance, he acknowledged that others had paid for his medications and treatments in the past (Tr. 63), and the copious medical record in this case confirms that plaintiff's alleged indigence has not prevented him from seeking treatment for his other, multiple medical conditions.

an individual's ability to work even if the individual's age, education, or work experience were specifically considered").

At step 2, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment.  ***See Dray v. Astrue***, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009).  "Thus, step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  ***Id.*** (quoting ***Bowen v. Yuckert***, 482 U.S. 137, 156, 107 S.Ct. 2287, 2298, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring)).  Because the conclusion that a claimant has at least one severe impairment requires the ALJ to proceed to the next step of the sequential evaluation, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."  ***Id.***  Such is the case here.

Plaintiff alleges a similar error at step 3 of the sequential evaluation – that is, the failure to consider whether all his impairments in combination were medically equivalent to a listed impairment.[4]  ***See*** 20 C.F.R. 416.926(b)(3).  In this regard, plaintiff maintains that the ALJ should have employed a medical expert to offer an opinion on the issue of medical equivalence.  I disagree.  Although the question of medical equivalence must

---

[4] Although it is not entirely clear whether plaintiff also means to suggest that the ALJ erred in finding that his various impairments individually did not meet or equal a listing, he fails to demonstrate that any of his impairments met all the criteria of the respective listing.  ***See Sullivan v. Zebley***, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (footnote omitted).

Relatedly, in his reply brief, plaintiff raises for the first time the argument that the ALJ erred in finding that his mental impairments did not meet the paragraph B criteria of the listings because treating sources had given plaintiff GAF scores of 45 - 50 at various points in time.  Assuming *arguendo* that a particular GAF score has any relevance to the determination whether these criteria are satisfied – a dubious proposition at best – the court is neither required nor inclined to address arguments raised for the first time in a reply brief.  ***See Butler v. Astrue***, 2012 WL 1520154 at *3 n.3 (D Colo. April 30, 2012).

be supported by the opinion of a medical expert, that requirement is satisfied, *inter alia*,

by the signature of an agency medical or psychological consultant on at least one of the

forms typically used by the Commissioner to assess disability at the initial stages of the

administrative process.  *See* **Social Security Ruling 96-6p**, 1996 WL 374180 at *3

(SSA July 2, 1996).  The record in this case contains such a form, signed by Dr. Donald

Glasco.  (*See* Tr. 100-117.)  Although plaintiff argues that an updated opinion was

required, he points to nothing suggesting that the particular circumstances of this case

would mandate an updated opinion.  *See id.* at *4.[5]  There thus was no reversible error

in this regard.

Plaintiff next alleges that the ALJ erred in assessing his residual functional

capacity at step 4 of the sequential evaluation, both by assigning less weight to the

opinions of his treating physicians and by discrediting his own subjective reports of pain

and functional limitation.  I am unpersuaded on both accounts.

---

[5]  These circumstances depend on the discretion of the ALJ:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> > * When no additional medical evidence is received, but *in the opinion of the administrative law judge* or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> >
> > * When additional medical evidence is received that *in the opinion of the administrative law judge* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

**Social Security Ruling 96-6p**, 1996 WL 374180 at *3 (emphases added; footnote omitted).  Plaintiff presents neither argument nor evidence relevant to the determinations contemplated by this ruling.

The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).[6] In all events, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301; *Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995); *Frey*, 816 F.2d at 513.

Plaintiff complains particularly of the ALJ's assessment of the opinions of his treating doctors,[7] Timothy Sullinger and Paul Glanville, and that of his treating

---

[6] These factors include: the physician's length of treatment of the claimant; the physician's frequency of examination; the nature and extent of the treatment relationship; the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. *See* 20 C.F.R. § 416.927(c).

[7] It strikes this court that the ALJ was rather generous in characterizing these doctors as a treating sources at all. Plaintiff first consulted each of these doctors in early 2012, more than a year after he filed his claim for benefits and nearly three years after his alleged date of onset. Dr. Sullinger saw plaintiff for the first time in February 2012, the same day he completed a Med-9 form stating that plaintiff was disabled. (Tr. 654-655.) Similarly, plaintiff's visit in May 2012 was only the second time he had seen Dr. Glanville – his only prior visit had been more than a year before. (Tr. 733.) Likewise, plaintiff was referred to Dr. Wallingford by his attorney in April 2012 for evaluation of his mental impairments. (*See* Tr. 743.) Dr. Wallingford saw plaintiff only one additional time, two weeks later, before he authored a functional capacity opinion. (*See* Tr. 747-749.)

psychiatrist, Richard Wallingford, which he seems to believe the ALJ improperly discredited on the basis that they were based on plaintiff's subjective reports. *See Nieto v. Heckler*, 750 F.2d 59, 60-61 (10th Cir. 1984). This argument misreads the ALJ's opinion, which instead afforded little weight to these treating source opinions "because they go beyond what is established by the claimant's evidence." (Tr. 32 (footnote omitted).) A lack of support in the medical record is an appropriate basis for assigning reduced weight to a treating source opinion. *See* 20 C.F.R. §§ 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.") & 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ exhaustively reviewed the voluminous evidence of record, citing specific, relevant examples to support his conclusions regarding the weight assigned to these treating source opinions. (*See* Tr. 32-33.) Plaintiff points to nothing specific in these doctors' opinions that would undermine that determination, and my own review of the record shows it to be well supported by the evidence.[8]

---

[8] For example, although Dr. Sullinger suggested that plaintiff was disabled, his notes of his single examination show that despite plaintiff's complaints of continuing headaches and neck pain, he exhibited no neck tenderness, and no other objective findings were noted. (Tr. 654-655, 685.) Plaintiff saw Dr. Sullinger on a few occasions subsequently, but for complaints unrelated to his impairments. (Tr. 681-682.) As for Dr. Glanville, although many of the work-related restrictions he imposed were said to be related to lower back pain (*see* Tr. 738-739), his examination notes say nothing about lower back pain, but instead address mostly plaintiff's complaints of sleep apnea, headaches, and neck pain (*see* Tr. 734-736). (*See also* Tr. 656-679 (notes of plaintiff's first visit to Dr. Glanville, in which he was evaluated for use of medical marijuana to deal with headache pain).) Finally, although Dr. Wallingford thought plaintiff would be unable to work "without significant psychologically based symptoms" (Tr. 748), his progress notes just two weeks later related that the medication he prescribed to address plaintiff's PTSD and depression had been "helpful" and that plaintiff had been more ambitious and active and had experienced less anhedonia and was less tearful (Tr. 740).

In a similar vein, plaintiff suggests that the ALJ improperly "cherry picked" the opinions of those medical sources he did credit, namely Drs. Ryan Otten, Dale Bowen, and Donald Glasco.  While it is true that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence," *Carpenter v. Astrue*, 537 F.3d 1265, 1265 (10th Cir. 2008), that is not what occurred here.  Instead, while the ALJ gave these opinions "significant weight," he stated plainly that he did not afford them greater weight because he found them partially inconsistent with the medical evidence, a conclusion which his opinion substantiates. (Tr. 31.)[9]  The ALJ thus properly discharged his duty in assessing these medical opinions, *see* **Social Security Ruling 96-8p**, 1996 WL 374184 at *7 (SSA July 2, 1996), and I therefore decline plaintiff's invitation to reweigh the evidence, *see* ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).  ***See also Reyes v. Bowen***, 845 F.2d 242, 245 (10th Cir. 1988) (conflicts in the evidence are for the ALJ to resolve).

Plaintiff also claims the ALJ erred in discrediting his own subjective reports of pain.  More particularly, he suggests that the ALJ failed to properly apply the analysis

---

[9] Of course, the ALJ is not required to adopt any particular medical source's opinion *in toto*. ***See Moses v. Astrue***, 2012 WL 1326672 at *4 (D. Colo April 17, 2012).  The determination of residual functional capacity is not a medical opinion, ***see id.***, but an administrative one, reserved to the Commissioner, 20 C.F.R. § 416.946; ***Rutledge v. Apfel***, 230 F.3d 1172, 1175 (10th Cir. 2000).  Although the ALJ's determination must be grounded in some medical evidence, ***see Anderson v. Shalala***, 51 F.3d 777, 779 (8th Cir. 1995), it is a broader assessment "based on all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), "including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations," ***Noble v. Callahan***, 978 F.Supp. 980, 987 (D. Kan. 1997).

required by **Luna v. Bowen**, 834 F.2d 161 (10th Cir. 1987),[10] for evaluating subjective

complaints of pain.  This argument is belied by the record.  The ALJ specifically referred

to the apposite regulations and interpretive guidelines in his opinion (**see** Tr. 24), and

nothing therein gives me reason to believe that he did not consider and apply the

relevant factors, or that he did so incorrectly.[11]  **See Cox**, 2000 WL 1472729 at *8 (citing

**Hamilton v. Secretary of Health & Human Services**, 961 F.2d 1495, 1498-99 (10th

Cir. 1992)).

Moreover, in general, "credibility determinations 'are peculiarly the province of

the finder of fact,' and should not be upset if supported by substantial evidence." **White**

**v. Barnhart**, 287 F.3d 903, 909 (10th Cir. 2001) (citing **Kepler v. Chater**, 68 F.3d 387,

390-91 (10th Cir. 1995)).  So long as the ALJ links his credibility assessment to specific

---

[10] In **Luna**, the Tenth Circuit outlined a tripartite test for evaluating subjective complaints of pain:

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

**Musgrave**, 966 F.2d at 1375-76 (citing **Luna**, 834 F.2d at 163-64).  The Commissioner's regulations have distilled this test into two parts, but the required analysis is the same.  **See** 20 C.F.R. § 416.929; **Social Security Ruling 96-7p**, 1996 WL 374186 (SSA July 2, 1996).

[11] **Luna** recognizes that the Commissioner may not discredit a claimant's subjective reports of pain solely due to lack of objective substantiation and must consider factors in assessing a claimant's subjective complaints of pain.  **See Luna**, 834 F.2d at 165-66 (ALJ should consider, *inter alia*, "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed," "regular contact with a doctor,"the claimant's daily activities, and the dosage, effectiveness, and side effects of medication").  Nevertheless, nothing in **Luna** requires the ALJ to evaluate and discuss each and every one of these considerations in his opinion.  Moreover, the ALJ here in fact did consider plaintiff's activities of daily living, which he found inconsistent with the level of limitation plaintiff alleged.  (**See** Tr. 27, 30-31.)  **See Jack v. Astrue**, 2010 WL 3615022 at *3 (D. Colo. Sept. 10, 2010) ("Although activities of daily living do not necessarily translate to the ability to perform work-related activities on a sustained basis, they do bear on a plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations.") (citations and internal quotation marks omitted).

11

evidence in the record, his determination is entitled to substantial deference. *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ's credibility determination in this case is substantiated by his extraordinarily thorough and well-documented consideration of the medical and other evidence before him.  He gave specific, legitimate reasons for his assessment of plaintiff's credibility, precisely tied to the evidence of record.  (*See* Tr. 27-31.)  Nothing in this determination warrants reversal of the disability decision.

Lastly, plaintiff claims that the Commissioner did not meet her burden at step 5 to demonstrate that the alternative jobs identified as being within his residual functional capacity exist in significant numbers.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.966(a)-(b).  *See also Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Although plaintiff argues that the number of jobs locally is not significant, the relevant inquiry is not so limited.  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country," "regardless of whether such work exists in the immediate area in which [the claimant] lives."  42 U.S.C. § 423(d)(2)(A).  *See also Botello v. Astrue*, 376 Fed. Appx. 847, 850-51 (10th Cir. April 26, 2010).   The three alternative jobs identified by the vocational expert at the hearing comprised some 890,000 jobs nationally, in addition to the 550 to 600 jobs available in Colorado.  (Tr. 96-97.)  *See Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. Apr. 18, 2008) (aggregating total numbers of all jobs identified by vocational expert).  Plaintiff does not

argue that such numbers are insignificant,[12] and they plainly are more than sufficient to meet the Commissioner's burden.  *See Botello*, 376 Fed. Appx. at 851 (finding it appropriate to uphold step 5 determination "based solely on the number of jobs that the VE identified as being available in the national economy" and declining to remand where plaintiff had not argued that number of jobs available nationally was insignificant).

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 9, 2015, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

---

[12]   Although plaintiff points out that the ALJ cited in his decision only to the number of jobs available within Colorado (*see* Tr. 35), any error in failing to cite to the remainder of the vocational expert's uncontroverted testimony on this issue was plainly harmless.  *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).